**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×
NGUYEN HALL,

|  |  |
|---|---|
| *Plaintiff,* | **18 CV 6295** |
| *v.* | |
| | **COMPLAINT** |
| MARINA B HOLDING LLC *d/b/a* WINDSOR JEWELERS, INC., | |
| *Defendant.* | |

------------------------------------------------------------------------×

Plaintiff Nguyen Hall, by her counsel, The Harman Firm, LLP, alleges for her Complaint

against Defendant Marina B Holding LLC ("Marina B") and Windsor Jewelers, Inc. ("Windsor")

as follows:

## PRELIMINARY STATEMENT

1.     Ms. Hall seeks damages and costs against Marina B for subjecting her to a hostile

work environment by discriminating against her based on her race in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, Section 1981 of the Civil

Rights Act of 1866 ("§ 1981"), 42 U.S.C. § 1981, and the New York City Human Rights Law

(NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq.*

2.     Ms. Hall also seeks damages and costs against Marina B for retaliating against her

for her complaints of race discrimination by constructively terminating her employment, in

violation of § 1981 and the NYCHRL.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

3.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's

claims arising under Title VII.

4.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

5.      All conditions precedent to maintaining this action have been fulfilled.  A charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC).  The EEOC issued a Right-to-Sue letter dated April 12, 2018, relating to the discriminatory acts described in this Complaint.  This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

6.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

7.      Plaintiff, at all times relevant hereto, was and is a resident of Westchester County in the State of New York.

8.      Upon information and belief, at all times relevant hereto, Defendant was and is a corporation organized under the laws of the State of New York with principal executive office located at 551 5th Avenue, 32nd Floor, NY, NY 10176.

## STATEMENT OF FACTS

9.      Marina B is a jewelry design company which, at all relevant times, was owned and managed by Windsor.

10.      On or about August 19, 2015, Marina B hired Ms. Hall as an Inventory and Production Manager.

11.      Ms. Hall had experience in business management and administration as well as a strong background in jewelry craft and design: she holds an associate's degree in Jewelry Design

from the Fashion Institute of Technology and a bachelor's degree from the University of Maryland, and has over a decade of experience in jewelry design.

12.     As an Inventory and Production Manager, Ms. Hall's primary job responsibilities included maintaining inventory, overseeing shipments and repairs, working on design and fabrication issues, and creating and sending purchasing orders and outgoing invoices, and attending out of town trunk shows.

13.     These are responsibilities which Ms. Hall was qualified to perform, and which she did satisfactorily perform during her employment with Marina B.

14.     In August 2015, Ms. Hall trained with Kat Fox, during which time Marina B clarified Ms. Hall's job responsibilities.

15.     Ms. Hall received positive feedback from several colleagues about how well she was adapting to the job.

16.     Ms. Hall, though relatively light-skinned and possessing a common Vietnamese first name, is from Louisiana, and Black Creole.

17.     Because of these traits, many individuals —coworkers included— frequently question her race and ethnic background.

18.     For example, Mr. Fattal, after seeing Ms. Hall's name on caller ID one day, asked Ms. Hall, "Are you Vietnamese?"

19.     Ms. Hall explained that while her first name is a common Vietnamese name, she is Black Creole.

20.     Another time, during a holiday dinner with coworkers, Giorgio Bulgari, Marina B's Creative Director, asked Ms. Hall about her ethnicity and background.

21.     Ms. Hall again explained that she was Black and specified that she was from Louisiana and that her family is Creole.

22.     Ms. Hall was directed to report to Beth Sharkey, the Director of Sales for Marina B.

23.     Ms. Hall also reported to Mr. Bulgari, Mr. Fattal, as well as the owners of the company.

24.     Ms. Sharkey had begun working for Marina B a few months prior to Ms. Hall's arrival.

25.     Ms. Hall immediately began experiencing problems working with Ms. Sharkey, who is white.

26.     Despite Ms. Hall's extensive experience and qualifications, Ms. Sharkey consistently refused to accept her input or value her contributions.

27.     For example, Ms. Sharkey consistently referred to Ms. Hall as her "assistant"— even though Ms. Hall had a manager-level position and worked in tandem with Ms. Sharkey and Mr. Bulgari.

28.     Ms. Hall promptly raised the issues she experienced with Ms. Sharkey to Mr. Fattal, speaking with him in and around September 2015.

29.     Mr. Fattal simply responded by stating that it sounded like Ms. Hall "had a problem with authority," but agreed to speak to Ms. Sharkey about the matter.

30.     However, nothing improved after this meeting; if anything, Ms. Sharkey's behavior towards Ms. Hall worsened.

31.     For example, Mr. Bulgari reached out to Ms. Hall to discuss Marina B's social media presence; Ms. Hall responded by referencing online images and accounts that included celebrities wearing Marina B jewelry.

32.     After Ms. Hall's response, she was severely reprimanded by Ms. Sharkey.

33.     In particular, after Ms. Hall forwarded images of a non-white celebrity wearing Marina B's products, Ms. Sharkey expressed that those weren't the type of images she wanted associated with the brand.

34.     Not long after this incident, and shortly after Ms. Hall's complaints to the company, Ms. Sharkey arranged for the hiring of a Marketing and Social Media Manager, a white woman named Sarah Stannard.

35.     Ms. Sharkey immediately favored Ms. Stannard over Ms. Hall and began assigning Ms. Stannard tasks that had previously been performed by Ms. Hall.

36.     Not only did Ms. Sharkey give Ms. Stannard responsibility over Marina B's social media accounts, Ms. Sharkey began using Ms. Stannard to meet with vendors and attend events in lieu of Ms. Hall.

37.     Ms. Sharkey began taking Ms. Stannard with her to shows in lieu of Ms. Hall.

38.     Moreover, Ms. Sharkey allowed Ms. Stannard to take long lunch breaks and spend more time online shopping, while criticizing Ms. Hall for even a short break.

39.     and regularly provided Ms. Stannard with feedback and guidance, while refusing to do so for Ms. Hall.

40.     Ms. Hall also spoke about her problems with Ms. Sharkey with Marina B employees who had begun working for Windsor directly.

41.     For example, in the fall of 2015, after Ms. Stannard was hired, Ms. Hall ran into a coworker, known only to Ms. Hall as Tania, who was crying.

42.     Tania who upon information and belief is Dominican, expressed how she felt mistreated by Ms. Sharkey because of her race.

43.     Tania explained that Ms. Sharkey had instructed her to clean the floors in advance of an event at the store—a task not included in her job responsibilities—which she found to be demeaning.

44.     While Tania was cleaning the floors by hand, Ms. Sharkey and Ms. Stannard were getting dressing up and styling themselves for the event.

45.     Moreover, at this time, Tania and Ms. Hall commiserated not only about Ms. Sharkey's treatment of minority employees, but of her obvious preference and treatment of white employees, specifically Ms. Stannard.

46.     Ms. Hall later spoke with a former Marina B employee, known only to Ms. Hall as Diana, who is Columbian, about her experiences with Ms. Sharkey.

47.     Diana confided in Ms. Hall that she suffered from Ms. Sharkey's harassment and aggressive behavior and resigned from Marina B in part because of Ms. Sharkey.

48.     Diana resigned from Marina B, but not before complaining about Ms. Sharkey to Mr. Herzig.

49.     Ms. Sharkey continued treating Ms. Hall less well than her white coworker Ms. Stannard, and over time, Ms. Sharkey's discriminatory and harassing treatment of Ms. Hall escalated, as she began to subject Ms. Hall to near-constant hostility.

50.     For example, Ms. Sharkey harshly reprimanded and raised her voice at Ms. Hall for minor or fabricated errors for which white employees were never disciplined.

51.     For instance, Ms. Sharkey falsely claimed that Ms. Hall had sent broken merchandise to a client and screamed at Ms. Hall in front of her coworker.

52.     During this incident, Tania witnessed Ms. Sharkey standing over Ms. Hall in physically aggressive manner and yelling, "You better answer me."

53.     Tania later texted Ms. Hall and said that, "[Beth] looked like she wanted to kill you."

54.     Ms. Sharkey regularly raised her voice at Ms. Hall in the presence of other employees, but never conducted herself this way with white employees.

55.     On two occasions, Ms. Sharkey's harassment of Ms. Hall escalated to physical violence: in early fall 2015, Ms. Sharkey repeatedly struck Ms. Hall on the arm for no discernable reason and without provocation, and in November 2015, Ms. Sharkey deliberately hit Ms. Hall over the head with a display at the Park Avenue Armory show.

56.     Ms. Hall, who was incredibly concerned for her safety and well-being after these violent outbursts, reported these incidences, but to no avail.

57.     Ms. Sharkey did not engage in similar inappropriate physical conduct with white employees.

58.     Ms. Hall continued to complain repeatedly to Mr. Fattal and Ronen Herzig (white), Marina B's Chief Operating Officer, about the discrimination and harassment she was facing.

59.     Ms. Hall specifically complained that Ms. Sharkey treated her and Tania less well than Ms. Stannard.

60.     However, Mr. Fattal and Mr. Herzig dismissed Ms. Hall's complaints.

61.     As Marina B did nothing to address the situation and the discriminatory treatment grew worse, Ms. Hall became unable to stand the persistent harassment.

62.     On March 21, 2016, Ms. Hall was constructively terminated from Marina B, as the discriminatory and unsafe treatment she suffered there made it impossible for her to continue working.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Hostile Work Environment in Violation of Title VII**

63.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 62 with the same force as though separately alleged herein.

64.     Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race.

65.     Defendant discriminated against Plaintiff on the basis of race by subjecting her to a hostile work environment, including treating her worse than white employees.

66.     As such, Defendant has violated Title VII.

67.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

68.     Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**SECOND CAUSE OF ACTION**
**Hostile Work Environment in Violation of § 1981**

69.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

8

70.     Section 1981 prohibits discrimination in a contractual relationship, such as employment, on the basis of race.

71.     Defendant violated § 1981 by subjecting Plaintiff to a hostile work environment based on her race, including treating her worse than white employees.

72.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

73.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of § 1981**

74.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75.     Section 1981 prohibits an employer from retaliating against an employee for engaging in protected activity under § 1981.

76.     Plaintiff engaged in protected activity under § 1981 when she properly complained to Defendant about race discrimination prohibited under § 1981.

77.     Defendant retaliated against Plaintiff by constructively terminating her employment.

78.     As such, Defendant has violated § 1981.

79.     As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

9

## FOURTH CAUSE OF ACTION
### Wrongful Termination in Violation of § 1981

80.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

81.     Section 1981 prohibits discrimination in a contractual relationship, such as employment, on the basis of race.

82.     Defendant violated § 1981 by terminating Plaintiff's employment based on her race.

83.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

84.     Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCRHL

85.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 84 with the same force as though separately alleged herein.

86.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of race.

87.     Defendant violated the NYCHRL when it subjected Plaintiff to a hostile work environment based on race, including treating her worse than white employees.

88.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

89.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCRHL

90.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 89 with the same force as though separately alleged herein.

91.     The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

92.     Plaintiff engaged in protected activity under the NYCHRL when she properly complained to Defendant about race discrimination unlawful under the NYCHRL.

93.     Defendant retaliated against Plaintiff by escalating its harassment to such a degree that it constructively terminated Plaintiff's employment.

94.     As such, Defendant has violated the NYCHRL.

95.     As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCRHL

96.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 95 with the same force as though separately alleged herein.

97.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of race.

98.     Defendant violated the NYCHRL when it constructively terminated Plaintiff's employment based on her race.

99.     As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

100.    Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.     For the first cause of action, damages to be determined at trial;

B.     For the second cause of action, damages to be determined at trial;

C.     For the third cause of action, damages to be determined at trial;

D.     For the fourth cause of action, damages to be determined at trial;

E.     For the fifth cause of action, damages to be determined at trial;

F.     For the sixth cause of action, damages to be determined at trial;

G.     For the seventh cause of action, damages to be determined at trial; and

H.     For such other and further relief as the Court deems just and proper.


Dated: New York, New York
July 11, 2018


By:     _____s/Walker G. Harman, Jr._____
        Walker G. Harman, Jr. [WH-8044]
        Owen H. Laird [OL-6994]
        THE HARMAN FIRM, LLP
        381 Park Avenue South, Suite 1220
        New York, NY 10016
        (212) 425-2600
        wharman@theharmanfirm.com
        olaird@theharmanfirm.com

        *Attorneys for Plaintiff*